**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM WYLAND, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-1601 |
| | ) | Magistrate Judge Maureen P. Kelly |
| GARY BROWNFIELD, Sheriff; | ) | |
| ANGELA ZIMMERLINK, | ) | ECF No. 90 |
| Commissioner; VINCENT VICITIES, | ) | |
| Commissioner; LARRY MEDLOCK, | ) | |
| Warden; MR. SILEO; | ) | |
| GERAUD STRICKLER, | ) | |
| Defendants. | ) | |

## OPINION

**KELLY, Magistrate Judge**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").

ECF No. 90. Through the Motion, Defendants seek to dismiss the *pro se* action filed by Plaintiff

William Wyland, who seeks declaratory and injunctive relief as well as an award of monetary

damages for alleged violations of his rights arising out of his treatment as an inmate at the

Fayette County Jail ("FJC"). Plaintiff's claims are brought pursuant to the provisions of 28

U.S.C. § 1343, 42 U.S.C. §§ 1983, 1985 and 1986; as well as the First, Sixth, Eighth and

Fourteenth Amendments to the U.S. Constitution. For reasons set forth herein, the motion is

granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's allegations arise out of his post-conviction incarceration at the Fayette County

Jail. He alleges that, as a homosexual, he was targeted by Defendant Gerauld Strickler, a guard

at the Jail, who taunted and verbally threatened Plaintiff. According to Plaintiff, Defendant

1

Strickler formed his hand into the shape of a gun and pointed it at Plaintiff and said "bang," while also telling Plaintiff that twenty-five people wanted to shoot him. ECF No. 86, p. 4. Plaintiff alleges that these threats constitute "serious threats of bodily injury" in violation of the Eighth Amendment to the U.S. Constitution. Plaintiff further alleges that Defendant Strickler violated Plaintiff's rights to equal protection by verbally harassing him and using vulgar epithets concerning his sexual orientation. Id. at 5.

Plaintiff also alleges that his Eighth Amendment rights were violated when, on one occasion, Defendant Strickler required him to clean a moldy shower, which also had backed up sewage, without protective gloves, a mask and/or proper cleaning equipment. Plaintiff avers that this caused "severe skin irritation and pain." Id. at 5. Plaintiff further alleges a violation of his Eighth Amendment rights because on one occasion, he was not permitted to change his uniform before eating lunch, even though he had been cutting the hair of other inmates and there was hair on his uniform. Plaintiff alleges that the FCJ violated his Eighth Amendment rights by inappropriately segregating mentally ill inmates with protective custody and punitive custody inmates, such that he was exposed to "dangerous behavior," including yelling, screaming and "human waste and urine all over b block." Id. Plaintiff also asserts that his Eighth Amendment rights were violated because he was not permitted outdoor exercise.

Plaintiff complains that his First and Fourteenth Amendment rights were violated by the inadequacy of the FCJ law library, which he asserts is limited to computerized research of old case law. Legal research is also alleged to be impeded by the inability to access the Fayette County law library, housed in the Fayette County Courthouse. Plaintiff contends that the condition of the FCJ law library required him to act as a "jailhouse lawyer due to the prison not having a law library that would be adequate for a pro se litigant." Id. at 7. Additionally,

Plaintiff alleges that his defense of criminal charges for shoplifting, providing false identification to police and public drunkenness was harmed because the condition of the law library impeded his preparation of a timely "bill of particulars and discovery" and, as a result, his criminal case "was lost." Id. at 9.

Plaintiff also seeks to remediate what he perceives to be jail-wide issues. In particular, Plaintiff alleges the insufficiency of semi-annual attempts to chemically treat for vermin resulting in the presence of unspecified vermin at the FCJ. Id. Plaintiff contends that the inadequacy of mental health screening resulted in the suicide of another inmate, which he learned of through a newspaper article. Plaintiff alleges that due process is violated because legal mail is not treated as privileged and is not promptly delivered or forwarded. In addition, Plaintiff alleges that notice is not provided when incoming or outgoing mail is rejected. Further, Plaintiff complains of the inadequacy of the prison grievance system, in that he does not believe it provides a meaningful manner to be heard, as evidence by the Defendants' failure to "follow up" with regard to Plaintiff's grievances. Plaintiff also alleges the violation of Sixth Amendment rights as a result of the monitoring of telephone calls to attorneys. Id. at 9, 10.

For each of these alleged violations, Plaintiff has asserted claims against the Fayette County Sheriff, members of the Fayette County Prison Board charged with inspecting the facility, the Commissioners of the Fayette County Prison, the Prison Warden as well as the individual guard who has allegedly verbally abused the Plaintiff.

Defendants have moved to dismiss the Amended Complaint, asserting that the claims against each of the Defendants save Gerauld Strickler are based not upon any personal involvement in the alleged violations, but solely upon Plaintiff's perception of Defendants' supervisory roles and thus are not cognizable at law. Defendants also move to dismiss the claim

against Gerauld Strickler because his conduct does not constitute a constitutional violation and he is entitled to good faith qualified immunity. With regard to the claims concerning the law library, Defendants argue that the claims with regard to the adequacy of the law library are legally insufficient and are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because the challenge to the adequacy of the law library allegedly impeded Plaintiff's ability to defend himself in an unrelated criminal proceeding. Finally, Defendants assert that the allegations regarding the conditions of Plaintiff's confinement do not rise to the level of a constitutional violation. Plaintiff has filed two affidavits in opposition to the motion to dismiss ECF Nos. 93 and 95, which is ripe for review.

## II. STANDARD OF REVIEW

In the Prisoner Litigation Reform Act (the "PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of oftentimes frivolous and harassing law suits brought by persons in custody. See Santana v. United States, 98 F.3d 752, 755 (3d Cir.1996). The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. The amended version of the statute now reads that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that-(A) the allegation of poverty is untrue; or (B) the action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Here, Plaintiff has been granted IFP status, and is a prisoner within the meaning of 28 U.S.C. § 1915.[1] ECF No. 5. Thus,

---

[1] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and

Section 1915(e)(2) is applicable herein. Moreover, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e). <u>See</u>, <u>e.g.</u>, <u>Keener v. Pennsylvania Board of Probation and Parole</u>, 128 F.3d 143, 145 n. 2 (3d Cir.1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir.2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In performing a court's mandated function of sua sponte reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Powell v. Hoover</u>, 956 F.Supp. 564, 568 (M.D.Pa.1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); <u>Tucker v. Angelone</u>, 954 F.Supp. 134, 135 (E.D.Va.) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), <u>aff'd</u>, 116 F.3d 473 (Table) (4th Cir.1997).

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). Dismissal is proper under Rule 12(b)(6), and hence, under Section 1915(e), where the court determines that the facts alleged,

---

conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter

of law. See, e.g., Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir.2000).

Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the

complaint, employing less stringent standards when considering pro se pleadings than when

judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. In order to survive a

motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a

claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556

(2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-

46 (1957)). The issue is not whether the plaintiff will prevail at the end but only whether he

should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319,

(1989). The complaint must be read in the light most favorable to the plaintiff and all well-

pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S.

97 (1976).

## III.  DISCUSSION

### A. PLAINTIFF'S ALLEGATIONS CONCERNING THE CONDITIONS OF HIS CONFINEMENT DO NOT ALLEGE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Defendants argue that the allegations in Plaintiff's Complaint concerning the conditions

of his confinement, even if accepted as true, do not state a violation of the Eighth Amendment.

ECF No. 90 at 10-12.  The Eighth Amendment's prohibition on "cruel and unusual punishment"

restrains prison officials from certain actions (e.g., the use of excessive force against prisoners),

and imposes on them a duty to provide "humane conditions of confinement." Betts v. New

Castle Youth Development Center, 621 F.3d 249, 256 (3d Cir. 2010), quoting, Farmer v.

<u>Brennan</u>, 511 U.S. 825, 832 (1994). That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " <u>Id.</u> (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27, (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.' " <u>Id.</u> at 835, 114 S.Ct. 1970 (quoting <u>Rhodes</u>, 452 U.S. at 347).

To prove an Eighth Amendment violation, two requirements must be met:

The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id., 511 U.S.* at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in <u>Farmer</u> as follows.

We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. <u>Farmer</u>, 511 U.S. at 837–838 (emphasis added).

Norris v. Davis, No. 10-1118, 2011 WL 1627340 * 3 (W.D. Pa. 2011).

The question of each Defendants' deliberate indifference is a subjective inquiry, while risk of harm is evaluated objectively. See Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir.2003). The factors to determine the existence of an objective risk of harm were recently explained by the United States Court of Appeals for the Third Circuit in Betts, supra, when a youthful offender was rendered a quadriplegic after playing football without protective equipment at the New Castle Youth Development Center:

> In Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), an inmate filed suit against prison officials alleging Eighth Amendment violations based on his involuntary exposure to environmental tobacco smoke (ETS) emanating from his cellmate's cigarettes. 509 U.S. at 27, 113 S.Ct. 2475 (alleging cellmate smoked five packs a day). The prison obtained a directed verdict from the district court but the court of appeals reversed in part, concluding that the lower court erred by denying Helling the opportunity to prove his allegations of unreasonable exposure to a future harm. Id. at 29, 113 S.Ct. 2475.
>
> The Supreme Court affirmed the court of appeals, holding that Helling had alleged a sufficiently serious harm: involuntary exposure to levels of second-hand smoke that created an unreasonable risk of harm to future health. Id. at 35, 113 S.Ct. 2475. With respect to proving the objective element of a harm rising to the level of a constitutionally serious deprivation on remand, the Supreme Court stated Helling would have to prove that he was exposed to "unreasonably high levels of ETS." Id. Such a showing requires "more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." Id. at 36, 113 S.Ct. 2475. Objectively serious harm also requires an assessment of society's view of the risk; i.e., whether "it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36, 113 S.Ct. 2475.

Betts, 621 F.3d at 256-257. Additionally, while it is certainly true that "inmates have a right to be free from extreme hot and cold temperature," Peterkin v. Jeffes, 661 F.Supp. 895, 904 (E.D.Pa.1987), aff'd in part and vacated in part, 855 F.2d at 1021 (3d Cir.1988), and to a minimal level of cleanliness within their cells, cf. Peterkin, 855 F.2d at 1027, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349.

Moreover, even if his conditions were objectively harsh, Plaintiff must allege facts that sufficiently show that the prison authorities acted with "deliberate indifference" to those conditions. Burkholder v. Newton, 116 Fed. Appx. 358, 363 (3d Cir. 2004); Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the Defendants acted with a sufficiently culpable state of mind. Id. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838.

Here, Plaintiff fails to allege facts sufficient to support either prong of the required inquiry to support a constitutional violation. With regard to the objective prong, simply stated, being required to eat lunch with hair on a shirt on one occasion and having to clean a moldy shower with backed up sewage without gloves or a mask on another single occasion simply do not give rise to a substantial risk of serious harm or challenge common standards of decency. These incidents may provide momentary discomfort, but as in Betts, no reasonable jury could conclude that either situation gives rise to a common or likely risk of serious harm. Plaintiff does not allege that he was prevented from wiping any hair off of his shirt, washing his hands after cleaning the shower, or that the allegedly painful rash was untreated. Accordingly, Plaintiff

has failed to allege either the requisite degree of an unreasonable risk of serious harm or a violation of standards of decency and these claims are dismissed with prejudice.

Similarly, while Plaintiff alleges the presence of vermin at the FCJ, his allegations do not meet the requirements for a claim of cruel and unusual punishment. See Mitchell v. Dodrill, 696 F. Supp.2d 454, 467 (M.D. Pa. 2010) (finding allegations of the presence of an infestation of "cockroaches, spiders, worms, nats (sic), mice and other unknown insects" insufficient to support a claim where there is no allegation of actual or potential harm to Plaintiff caused by these general conditions ). "To the extent that [Plaintiff] alleges discomfort in his cell, he does not meet the requirements of a claim of cruel and unusual punishment." Id.

With regard to the alleged unsanitary and/or dangerous conditions of his confinement, Plaintiff also alleges exposure to mentally ill prisoners, who "disrupted" his life and exposed him to yelling, screaming and behaviors that left him afraid. He further alleges that the mentally ill had placed "human waste and urine all over b block." These allegations are identical to those in Dantzler v. Beard, No. 05-1727, 2007 WL 5018184 at * 11-12 (W.D. Pa. Dec. 6, 2007), which were insufficient to maintain an Eighth Amendment claim. As in Dantzler, Plaintiff does not allege facts concerning the proximity of the conditions to him, nor the length of time he was exposed to such conditions, such as for example, how long bodily excretions were permitted to remain until they were removed. "Certainly length of exposure to unsanitary conditions is one consideration in determining the objective prong of the Eighth Amendment." Id. See also Banks v. Beard, No. 03-659, 2006 WL 2192015, 11 (W.D. Pa., Aug. 1, 2006):

> The length of exposure to unsanitary conditions is one consideration in evaluating the objective prong of the Eighth amendment. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir.1994)("the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable."). While plaintiff does allege that he was placed in such cells on more than one occasion, he does not allege that any particular unsanitary conditions

remained for an inordinate period of time. Accordingly, Plaintiff has failed to raise conditions that will satisfy the objective component of an Eighth Amendment claim. Compare, <u>Qawi v. Howard</u>, 2000 WL 1010281, *3 (D.Del. July 7, 2000)("For example, in [<u>Smith v.</u>] <u>Copeland</u> [, 87 F.3d 265, 268 (8th Cir.1996) ], the Eighth Circuit Court of Appeals held that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was 'made to endure the stench of [his] own feces and urine,' did not rise to the level of an Eighth Amendment violation."); <u>Davis v. Scott</u>, 157 F.3d 1003, 1004 (5th Cir.1998)(inmate being placed in cell that was "just filthy with blood on the walls and excretion on the floors and bread loaf on the floor" for three days did not meet the objective component of the Eighth Amendment)(some internal quotes omitted).

Moreover, the record essentially is silent as to whether any of the defendants knew about the conditions of the various cells, or if they did, when they were made aware of it and how long thereafter the cells remained unsanitary. Thus, Plaintiff has failed to raise allegations to support a finding on the subjective prong of the Eighth Amendment with regard to any filthy cell claim.

Because Plaintiff has not alleged his proximity to the conditions,  the length of time he was exposed to the allegedly unsanitary conditions, or whether any of the Defendants knew of the conditions and how long thereafter the conditions remained, Plaintiff has failed to raise allegations to support his claim with regard to the unsanitary and/or unsafe conditions of B Block and the FCJ in general.  Plaintiff's Eighth Amendment claims based upon the conditions of his confinement are therefore dismissed.

Plaintiff complains that he was precluded from outdoor exercise; however, he fails to allege the unavailability of indoor exercise.  In <u>Laufgas v. Speziale</u>, 263 Fed. App'x 192, 198 (3d Cir. 2008), the Court of Appeals held that the District Court properly dismissed a claim based on lack of sufficient exercise where the Plaintiff failed to allege he was precluded from any form of exercise, or that he sustained a specific physical injury from the lack of exercise.  In the absence of an allegation of a specific physical injury, Plaintiff's allegations are insufficient to establish that the denial of outdoor exercise is "sufficiently serious to deprive inmates of the minimal

civilized measure of life's necessities." <u>See</u>, <u>also</u>, <u>Gattis v. Phelps</u>, 344 Fed. App'x. 801, 805 (3d Cir. 2009).   This claim is dismissed.

Finally, Plaintiff generally alleges the inadequacy of medical treatment and mental health screening the FCJ, but does not allege that he suffered from any serious mental illness or medical ailment necessitating treatment.  Plaintiff has also not stated a plausible claim under the Eighth Amendment.

In <u>Estelle v. Gamble</u>, the United States Supreme Court noted that the most elementary principles underlying Eighth Amendment constitutional jurisprudence "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. 97, 103 (1976). The <u>Estelle</u> Court concluded that the Eighth Amendment prohibits the deliberate indifference to serious medical needs of prisoners. <u>Id.</u> at 104. The Court continued that a cause of action under § 1983 is thereby established "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Id.</u> at 104–05 (footnotes omitted). It was not until 1994, however, in <u>Farmer v. Brennan</u>, that the United States Supreme Court clarified its meaning of the term "deliberate indifference."  <u>Farmer v. Brennan,</u> 511 U.S. 825 (1994). In Farmer, the Court held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837–38. The <u>Farmer</u> Court also discussed its reasoning in <u>Estelle</u>, noting that negligence in

diagnosing or treating the medical conditions of prisoners will not rise to the level of an Eighth Amendment violation. <u>Farmer</u>, 511 U.S. at 835 (quoting <u>Estelle</u>, 429 U.S. at 106).

Conversely, a plaintiff must also demonstrate a medical need that is objectively "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person easily would recognize the necessity for a doctor's attention. <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir.1987).

Here, Plaintiff has failed to allege the most basic facts in support of his claim.  In the absence of any allegations concerning a serious medical need to which prison officials were deliberately indifferent, Plaintiff fails to allege facts sufficient to state a claim for which relief may be granted and the claim is dismissed.

### B. CLAIMS FOR VERBAL HARASSMENT ARE INSUFFICIENT AS A MATTER OF LAW.

Plaintiff claims that his Eighth Amendment rights were violated when he was subjected to verbal harassment and threatening remarks from Defendant Strickland.  Assuming these claims are true, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. <u>See</u> <u>Burkholder v. Newton</u>, 116 Fed. App'x 358, 360 (3d Cir.2004); <u>Dewalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir.1999); <u>Williams v. Bramer</u>, 180 F.3d 699, 706 (5th Cir.1999); <u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir.) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations), cert. denied, 464 U.S. 998 (1983); <u>Wilson v. Horn</u>, 971 F.Supp. 943 (E.D.Pa.1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), aff'd, 142 F.3d 430 (Table) (3d Cir.1998); Accord <u>Collins v. Cundy</u>, 603 F.3d 825, 826 (10th Cir.1979) (allegation that sheriff threatened to hang prisoner did not state claim for constitutional

violation); <u>Maclean v. Secor</u>, 876 F.Supp. 695, 698 (E.D.Pa.1995) (threat by BOP guard to "see to it" that "pieces of s-" like plaintiff would be "taken care of" was not adequate to make out constitutional claim as "[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim").

Moreover, to the extent Plaintiff alleges either an Eighth Amendment claim or an equal protection claim under the Fourteenth Amendment for verbal harassment related to his sexual orientation, such conduct, while reprehensible, does not constitute the violation of a constitutional right. See, <u>Morgan v. Ward</u>, 699 F.Supp. 1025 (N.D.N.Y.1988) (use of racial slurs do not support a claim under the Eighth Amendment); <u>Williams v. Pecchio</u>, 543 F.Supp. 878 (W.D.N.Y.1982) (verbal harassment, including the use of the term "nigger," does not support a Section 1983 claim). Plaintiff's Eighth Amendment and Fourteenth Amendment claims based upon verbal harassment and threats are dismissed with prejudice.

## C. PLAINTIFF'S ACCESS TO COURT CLAIM BASED UPON THE ADEQUACY OF THE LIBRARY.

Plaintiff alleges that his First Amendment right of access to courts was violated because the FCJ law library was inadequate, limited to computerized files of older cases. Plaintiff alleges that in the course of representing himself in a criminal proceeding, the inadequacy of the library allegedly prevented Plaintiff from filing a motion for a "bill of particulars" and a motion for pre-trial discovery in an unrelated criminal proceeding for shoplifting and public drunkenness. In the exhibits attached to Plaintiff's Amended Complaint, which include the underlying criminal complaint and Affidavit of Probable Cause, it appears that Plaintiff was arrested for shoplifting a $1.29 packaged pepper steak (subsequently discovered in plaintiff's back pocket), public drunkenness and providing false identification to law enforcement authorities. ECF No. 86-1 at pp. 3-8. Subsequent to his arrest, Plaintiff waived his right to counsel, choosing to represent

himself (ECF No. 86-1 p. 9]), and on June 9, 2009, was convicted by a jury of retail theft and providing false identification (ECF No. 86-1, pp.16-17).

A claim for denial of access to courts based upon the insufficiency of a prison law library requires, at a minimum, that the Plaintiff demonstrate the underlying claim was "arguable" and "nonfrivolous," describe the official acts frustrating the litigation, and identify a remedy that could not otherwise be obtained.  See Falciglia v. Erie County Prison, 279 Fed.App'x. 138, 140, (3d Cir. 2008), citing Christopher v. Harbury, 536 U.S. 403, 415 (2002). Plaintiff cannot make this showing.

First, Plaintiff alleges that because of the inadequacy of the law library, he was unable to file a motion for a bill of particulars or obtain pre-trial discovery.  Plaintiff does not allege why the condition of the law library prevented him from filing either document, and further fails to allege any facts establishing why a bill of particulars or pre-trial discovery would have aided him in the defense of the case.  As recently explained by the United States Court of Appeals for the Third Circuit, a bill of particulars is wholly unnecessary when the charges against a criminal defendant are clearly set forth in a complaint or Affidavit of Probable Cause and the defendant is made aware of the facts upon which the charges are based:

> A bill of particulars is a "formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor[.]" Black's Law Dictionary 177 (8th ed.2004). Its purpose is to "inform the defendant of the nature of the charges brought against him ... [so he may] adequately prepare his defense ... avoid surprise during the trial and ... [be] protect[ed] ... against a second prosecution for an inadequately described offense." United States v. Urban, 404 F.3d 754, 771 (3d Cir.2005) (internal quotation marks and citation omitted). However, a bill of particulars is only required if an indictment fails to perform these functions in the first place. Id. at 771–72. We review for abuse of discretion, and find no abuse "unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.1971).

The court did not abuse its discretion in denying Jones a bill of particulars, and in any event, Jones suffered no prejudice from the denial. Before trial, Jones requested a bill of particulars specifying the locations and times of the drug sales for which the government would allege Jones was responsible. The court's denial was proper. An indictment must provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). Here, the government's indictment contained numerous factual allegations about the Morales Organization's conspiracy and Jones's involvement, meeting the 7(c)(1) standard and making a bill of particulars unnecessary. See <u>Urban</u>, 404 F.3d at 772. Moreover, Jones suffered no prejudice. Early on in the trial, namely on January 14, 2008, the government elicited testimony from a witness about drug markets run by Jones. The trial continued through March. Accordingly, Jones had considerable time to investigate the locations identified by the witness and to prepare his defense. Cf. <u>United States v. Rosa</u>, 891 F.2d 1063, 1067 (3d Cir.1989) (holding the denial of a bill of particulars was not reversible error because it failed to cause the defendant any prejudice).

<u>U.S. v. Jones</u>, No. 09-2955, 2011 WL 4792869 at *2 (3d Cir. 2011). The charges against the Plaintiff for retail theft and providing false information as well as all of the facts and evidence upon which the charges were predicated were clearly set forth in both the criminal complaint and the Probable Cause Affidavit. Accordingly, it cannot be said that a bill of particulars would have provided any information not already available to the Plaintiff. In addition, Plaintiff does not allege how a more thorough law library would have affected the nature of the discovery he would have sought (if any), nor the impact that discovery, if allowed, would have had on the clear cut case against him. These elements must be alleged in the complaint. <u>Hairston v. Nash</u>, 247 Fed. App'x. 375, 376 (3d Cir. 2007).

Second, Plaintiff was offered counsel through the Fayette County Public Defender's Office to defend against the retail theft/false identity criminal charges. He chose to defend himself and so cannot now complain that his case was hindered by his lack of understanding of criminal procedure. Plaintiff's refusal of appointed counsel and choice to proceed pro se negates any claim of denial of access to the courts. <u>See</u>, <u>e.g.</u>, <u>Degrate v. Godwin</u>, 84 F.3d 768, 769 (5th Cir.1996) ( per curiam ) (where pretrial detainee was offered state appointed counsel but he

subsequently rejected such counsel in order to proceed pro se, state did not violate detainee's right of access to the courts by hindering his access to a law library; "having rejected the assistance of court-appointed counsel, [detainee] Degrate had no constitutional right to access a law library in preparing the pro se defense of his criminal trial."); Love v. Summit County, 776 F.2d 908, 914 (10th Cir.1985) (state is entitled to choose whether it will meet its obligation to provide access to the courts by providing an adequate law library or by providing legal assistance in the form of an attorney).

Plaintiff also alleges that the inadequacy of the FCJ law library hindered his ability to draft an initial complaint in this matter. However, Plaintiff has filed an Amended Complaint, setting forth the facts upon which his claims are based and citing appropriate case law in support of his claims. He has not sustained an "injury" from the limitations of the law library (if any) in this action and, as with his defense of the unrelated criminal action, Plaintiff cannot allege facts establishing that his litigation was hindered by the alleged shortcomings of the library. Thus, Plaintiff's access to court claim is dismissed with prejudice. Annis v. Fayette County Jail, No. 07-1628, 2008 WL 763735, at 7 (W.D. Pa. March 20, 2008).

Additionally, to the extent Plaintiff alleges a violation of his First or Fourteenth Amendment rights based upon the alleged inadequacy of the inmate grievance process, Plaintiff has failed to state a claim upon which relief may be granted.

"An inmate has no constitutional right to a grievance procedure," and denial of a grievance does "not infringe upon [an inmate's] constitutional right to petition the government for redress." Caldwell v. Beard, 324 Fed. Appx. 186, 189 (3d Cir.2009). "Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to

address his grievances." <u>Wilson v. Horn</u>, 971 F.Supp. 943, 947 (E.D.Pa.1997). Accordingly, Plaintiff's claims arising out of the grievance process at FCJ are dismissed with prejudice.

### D. MAIL AND TELEPHONE CLAIMS.

In support of Defendants' Motion to Dismiss Plaintiff's claims regarding the treatment of legal mail, the promptness of delivery of mail and the rejection of incoming and outgoing communications in violation of the First Amendment, Defendants argue that Plaintiff has not alleged any facts in support of a claim for which relief may be granted. Upon consideration of the allegations of the Amended Complaint and Plaintiff's responses to the Motion to Dismiss, the Court agrees that Plaintiff has failed to allege facts sufficient to state a plausible claim pursuant to <u>Twombly</u>.

In <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974), the United States Supreme Court reviewed a state's procedures for censoring inmates' outgoing correspondence. In its review, the Court was concerned with the fact that censorship of prisoners' outgoing mail affected the First and Fourteenth Amendment rights of the addressee as well as the sender of the correspondence. In light of that recognition, the Court held that censorship of outgoing prisoner mail is justified when: 1) the regulation or practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and 2) the limitation is no greater than is necessary or essential to the protection of the particular governmental interest involved. <u>Martinez</u>, 416 U.S. at 413.

In addition, the Court held that "the interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." <u>Id.</u> at 418. As such, the Court required that "an

inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." Id. at 418–19.

Plaintiff alleges that he has not been afforded notice of his rejected incoming or outgoing mail, nor has he been provided with prompt delivery. However, as noted above, Plaintiff only makes conclusory allegations concerning his right to notice and delivery and Plaintiff does not allege facts showing that Defendants were personally involved in the interference with his outgoing communications. Section 1983 liability may not be premised on the doctrine of respondeat superior; instead, Plaintiff must aver that Defendants were personally involved by alleging personal direction, actual knowledge or acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Here, Plaintiff's averments fall short of this requirement.

In further support of Defendants' Motion to Dismiss Plaintiff's First Amendment claim regarding censorship of legal mail, Defendants argue that Plaintiff has failed to allege facts indicating that legal mail was being opened outside of his presence. In Jones v. Brown, the United States Court of Appeals for the Third Circuit held that a blanket practice of opening inmate legal mail outside the presence of the inmate implicates First Amendment concerns. 461 F.3d 353, 359 (3d Cir.2006). However, Plaintiff fails to aver facts that suggest a plausible claim for violation of his First Amendment rights. Plaintiff only avers that legal mail was opened by FCJ staff members, but he does not specifically aver whether it was properly identified as legal mail, whether the FCJ had a policy regarding legal mail, what that policy provided, and whether the FCJ violated that policy. Further, Plaintiff fails to aver whether Defendants engaged in a single, inadvertent opening of properly marked legal mail outside of his presence, or a pattern or

practice of such actions. The former does not infringe his First Amendment rights, while a pattern or practice of such behavior does. Bieregu v. Reno, 59 F.3d 1445, 1458 (3d Cir.1995), *abrogated on other grounds by* Lewis v. Casey, 518 U.S. 343 (1996). Consequently, Plaintiff has failed to allege facts sufficient to state a plausible First Amendment claim pursuant to Twombly. Therefore, Defendant's Motion to Dismiss on this claim is granted.

Plaintiff similarly makes broad allegations that telephone calls to attorneys are monitored in violation of the Sixth Amendment. However, Plaintiff does not allege any specific facts indicating that he made a call to an attorney, the identity of the attorney, the case for which the call was made, or that any particular call made to or by him was improperly monitored.  In sum, there is no factual basis upon which the Court can consider Plaintiff's allegations and the claim is dismissed pursuant to Twombly.

### E.  PLAINTIFF FAILS TO STATE CLAIMS AGAINST DEFENDANTS ZIMMERLINK, VICITES, BROWNFIELD, MEDLOCK, CROFTCHECK, ZAPOTOSKY, LALLY WAGNER OR VERNON.

It is well established that no liability exists under Section 1983 solely by means of vicarious liability or *respondeat superior.* Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir.1990). Instead, in order for Section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005). In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'"  Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).  Additionally, in cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, Section 1983 liability may exist. See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir.1988) (overruled in part on other

grounds by <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993)). At a minimum, such liability attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" <u>Colburn</u>, 838 F.2d at 673 (quoting <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir.1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. <u>See</u> <u>e.g.</u> <u>Jefferson v. Wolfe</u>, No. 04–44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing <u>Watkins v. Horn</u>, No. CIV.A. 96–4129, 1997 WL 566080, at *4 (E.D.Pa. Sept.5, 1997)); <u>see also</u> <u>Pressley v. Beard</u>, 255 F.App'x 216, 218 (3d Cir.2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); *Cf.* <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir.1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause.

Plaintiffs' allegations against Defendants Zimmerlink, Vicites, Brownfield, Medlock, Croftcheck, Zapotosky, Lally Wagner and Vernon are all based on their perceived supervisory roles as Fayette County commissioners, wardens or prison board members and their alleged failure to take corrective action after Plaintiff complained about his conditions of confinement. Plaintiff has failed to allege any personal involvement on their parts with regard to the specific allegations concerning the conditions of his confinement and, consequently, has failed to state claims against them. Accordingly, these claims will be dismissed. As it would be futile to grant leave to amend, dismissal will be with prejudice. <u>Blount v. Folino</u>, No. 10-697, 2011 WL 2489894, 15 (W.D. Pa., June 21, 2011).

**IV.    CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (ECF No. 90) is granted. Notwithstanding, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint-regardless of whether the plaintiff requests to do so—when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir.2007) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Accordingly, Plaintiff must be given the opportunity to file another amended complaint with regard to those claims not dismissed with prejudice. To wit, Plaintiff is permitted to file a second amended Complaint as to his Eighth Amendment claims based upon the conditions of his confinement related to medical care and the alleged unsanitary conditions of his particular housing, as well as his First Amendment claims regarding the alleged interference with his incoming/outgoing mail and telephone calls. An appropriate order follows.


Dated: November 9, 2011


cc:     All counsel of record via CM/ECF

        William Wyland
        580-267
        SCI Camp Hill
        P.O. Box 200
        Camp Hill, PA 17001